Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ST. PAUL PROTECTIVE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>STANISLAV SIMALA *et al.*,<br><br>Defendants. | Civil Action No.: 21-17010 (ES) (JSA)<br><br>OPINION |

SALAS, DISTRICT JUDGE

This is an insurance coverage dispute arising out of an underlying state court action commenced by the Estate of Monika Brejnak, Wojcjech Brejnak, and Katarzyna Brejnak (together, the "Brejnak Defendants") against Stanislav Simala, Anna Simala, and Evelina Simala (together, the "Simala Defendants") entitled *Wojcjech Brejnak, et al. v. Evelina Simala, et al.*, pending in the Superior Court of New Jersey, Law Division: Bergen County, Docket No. BER-L-004132-21 (the "Underlying Action").  (*See* D.E. No. 1 ("Complaint" or "Compl.")).  Plaintiff St. Paul Protective Insurance Company ("Plaintiff" or "St. Paul") brought this action seeking a judgment that it has no duty to defend or indemnify the Simala Defendants in the Underlying Action under a homeowners' policy issued by Plaintiff to the Simala Defendants.  (*See id.*).  Before the Court is Plaintiff's motion for summary judgment, seeking a declaration that it has no duty to defend or indemnify the Simala Defendants in the Underlying Action.  (D.E. No. 63 ("Motion")).  Having considered the parties' submissions, the Court decides this matter without oral argument.  *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  For the reasons set forth below, Plaintiff's motion for summary judgment is **GRANTED.**

1

## I.    BACKGROUND[1]

### A.    Factual Background

Unless otherwise noted, the following facts are not in dispute.

#### i.    The Underlying Action

On or about June 24, 2021, the Brejnak Defendants filed a lawsuit against the Simala Defendants in the Superior Court of New Jersey, Law Division: Bergen County, Docket No. BER-L-004132-21, seeking damages as a result of the suicide of Monika Brejnak.  (Pl. SMF ¶ 7; Simala Resp. SMF ¶ 7; Brejnak Resp. SMF ¶ 7).  In the Underlying Action, the Brejnak Defendants allege that on February 10, 2021, Monika Brejnak took her own life at the age of 14 by ingesting a toxic combination of prescription medications.  (Pl. SMF ¶ 20; Simala Resp. SMF ¶ 20; Brejnak Resp. SMF ¶ 20).  At the time, Monika was a student in her first year at Garfield High School in Garfield, New Jersey.  (D.E. No. 52-8, Ex. 7 ("Underlying Fifth Amended Complaint" or "Underlying FAC") to D.E. No. 52-1 ("Usery Decl.") ¶ 4).  The Brejnak Defendants allege that for nearly the entirety of her adolescent academic career, Monika had a learning disability for which she received special education support and services up to the time of her death.  (Pl. SMF ¶ 21; Simala Resp. SMF ¶ 21; Brejnak Resp. SMF ¶ 21; Underlying FAC ¶ 11).  According to the Brejnak Defendants, prior to her passing, Monika Brejnak frequently conversed with Defendant Evelina Simala, the minor child of Anna Simala and Stanislav Simala, by text and/or digital messaging.  (Pl. SMF ¶ 22; Simala Resp. SMF ¶ 22; Brejnak Resp. SMF ¶ 22).  The Brejnak Defendants allege that in the

---

[1]    The Court gathers the following facts primarily from Plaintiff's statement of material facts, the Simala Defendants' responses to Plaintiff's statement of material facts, the Brejnak Defendants' responses to Plaintiff's statement of material facts, as well as the Simala Defendants' statement of material facts, the Brejnak Defendants' statement of material facts, Plaintiff's responses to the Simala Defendants' statement of material facts, and Plaintiff's responses to the Brejnak Defendants' statement of material facts.  (D.E. No. 52-15 ("Pl. SMF"); D.E. No. 55 at 1–2 ("Simala Resp. SMF"); D.E. No. 56 at 3–4 ("Brejnak Resp. SMF"); D.E. No. 55 at 3–5 ("Simala SMF"); D.E. No. 56 at 5–8 ("Brejnak SMF"); D.E. No. 59-1 ("Pl. Resp. SMF")).

months leading up to Monika Brejnak's death, Evelina Simala would, via digital messaging, consistently harass, bully, and demean Monika Brejnak with intimidating, offensive comments related to her disability, her looks, her body, and her family, in addition to threatening Monika Brejnak with physical violence. (Pl. SMF ¶ 24; Simala Resp. SMF ¶ 24; Brejnak Resp. SMF ¶ 24; Underlying FAC ¶ 18). In the Underlying Action, the Brejnak Defendants allege that Evelina Simala wrote "vitriolic and violent" comments to Monika Brejnak, including, but not limited to the following messages:

- "No wonder no one wants to be friends with you"

- "I'm going to punch you soon . . . I'll slap busy in your face . . . I don't care . . . Go get help"

- "What the hell is wrong with you? . . . You know where I'm going to come? . . .To take you to a mental hospital"

- "I will die from your stupidity"

- "R*tard is getting blocked soon . . . Ok your blocked . . . Bye . . . Your blocked  . . . B**ch . . . R*tard . . . F***ing autistic baby . . . Ignore me all you want . . . Don't try to come to my house"

- "I'm confused how austistic and special edd you are and you have no friends"

- "So I'll throw you off a bridge"

- "Ur mom and dad were clearly not meant for each other . . . . Even sister is ugly . . . She had to get so much plastic surgery and has to wear pounds of makeup to look ok . . . Ur family is just a mess . . . . A complete mess"

- "My mom dosnt liek you"

- "My mom dosnt like your family"

(Pl. SMF ¶ 25; Simala Resp. SMF ¶ 25; Brejnak Resp. SMF ¶ 25; Underlying FAC ¶¶ 19–20). The Brejnak Defendants allege that that as a direct and proximate result of Evelina Simala's

continued intimidating and harassing comments, Monika Brejnak suffered humiliation, mental anguish, emotional distress, psychological trauma, and, ultimately, took her own life." (Pl. SMF ¶ 27; Simala Resp. SMF ¶ 27; Brejnak Resp. SMF ¶ 27; Underlying FAC ¶ 24). Further, the Brejnak Defendants allege that Evelina Simala's parents, Stanislav Simala and Anna Simala, knew or should have known that injury to Monika Brejnak would likely or probably result from Evelina Simala's conduct and were reckless, or at least negligent, in failing to discharge their parental and supervisory duties which resulted in Evelina Simala's conduct and Monika Brejnak's subsequent injuries and death. (Underlying FAC ¶¶ 31 & 51–59; Pl. SMF ¶ 26; Simala Resp. SMF ¶ 26; Brejnak Resp. SMF ¶ 26). In the Underlying Action, the Brejnak Defendants seek compensatory and punitive damages for alleged negligent, willful, deliberate, grossly negligent, and reckless conduct by the Simala Defendants which caused Monika Brejnak's death. (Pl. SMF ¶ 28; Simala Resp. SMF ¶ 28; Brejnak Resp. SMF ¶ 28; Underlying FAC ¶ 26). The Brejnak Defendants have asserted causes of action sounding in (i) civil liability for bias crimes pursuant to N.J.S.A. 2A:53A-21, (ii) intentional infliction of emotional distress, (iii) negligent infliction of emotional distress, (iv) negligent parental supervision, (v) wrongful death pursuant to N.J.S.A. 2A:31-1, *et seq.*, and (vi) survivorship pursuant to N.J.S.A. 2A:15-3. (Pl. SMF ¶ 18; Simala Resp. SMF ¶ 18; Brejnak Resp. SMF ¶ 18; Underlying FAC ¶¶ 27–72).

On September 21, 2022, Evelina Simala was produced for a deposition in the Underlying Action. (Pl. SMF ¶ 29; Simala Resp. SMF ¶ 29; Brejnak Resp. SMF ¶ 29). At deposition, Evelina Simala testified that she "sat down and typed" the messages she sent to Monika Brejnak and explained that her text messages with Monika Brejnak "were all on purpose." (Pl. SMF ¶ 30; Simala Resp. SMF ¶ 30; Brejnak Resp. SMF ¶ 30; Brejnak SMF ¶ 22; Pl. Resp. SMF at 14). Though Evelina Simala testified that she would message Monika Brejnak when she was "mad and

upset," she also stated that she did not think that the messages she sent would be hurting Monika Brejnak's feelings because they were friends and she knew they would make up later. (Simala SMF ¶ 20; Brejnak SMF ¶ 5; Pl. Resp. SMF at 7). Evelina Simala further testified that she was just kidding when she called Monika Brejnak "dumb" and "stupid" and when she sent messages about being physically violent with Monika Brejnak. (Simala SMF ¶¶ 20–22; Brejnak SMF ¶¶ 10–11; Pl. Resp. SMF at 7 & 11).

### ii.    The Insurance Policy

Prior to the events forming the basis of the Underlying Action, St. Paul had issued to Stanislav Simala and Anna Simala a policy of homeowners' insurance bearing policy number 606978660 633 1 with effective dates of July 8, 2020 to July 8, 2021 (the "St. Paul Policy"). (Pl. SMF ¶ 1; Simala Resp. SMF ¶ 1; Brejnak Resp. SMF ¶ 1). Subject to its terms, conditions, exclusions, and other provisions, the St. Paul Policy provides coverage for bodily injury that takes place during the policy period and is caused by an accident. (Pl. SMF ¶ 2; Simala Resp. SMF ¶ 2; Brejnak Resp. SMF ¶ 2). The St. Paul Policy provides, in part, as follows:

> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
>
> 1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and
>
> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" is exhausted by the payment of a judgment or settlement.

(Pl. SMF ¶ 3; Simala Resp. SMF ¶ 3; Brejnak Resp. SMF ¶ 3; D.E. No. 52-2 , Ex. 1 to Usery Decl. at STPAUL000031). Under the St. Paul Policy, "Bodily injury" means, in relevant part, "bodily

harm, sickness or disease, including required care, loss of services and death that results," and "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: a. 'Bodily injury'; or b. 'Property damage.'"  (Pl. SMF ¶ 5; Simala Resp. SMF ¶ 5; Brejnak Resp. SMF ¶ 5; Ex. 1 to Usery Decl. at STPAUL00008–9).  The St. Paul Police defines "insured" as "[Stanislav Simala and Anna Simala] and residents of your household who are: (1) [Stanislav Simala and Anna Simala's] relatives; or (2) Other persons under the age of 21 and in the care of any person named above[.]"  (Pl. SMF ¶ 5; Simala Resp. SMF ¶ 5; Brejnak Resp. SMF ¶ 5; Ex. 1 to Usery Decl. at STPAUL00008).

The St. Paul Policy contains certain pertinent coverage exclusions.  *First*, coverage is excluded for bodily injury or property damage "arising out of any oral, written, electronic, digital or other means of communication, publication or physical action that:"

a. Is directed at or to an individual or group of individuals; and

b. Includes content, material or action that is or is perceived as:

(1) Bullying, harassing, degrading, intimidating, threatening, tormenting or otherwise abusive; or

(2) Causing or having caused emotional or psychological distress or fear of imminent harm or death.

(Hereinafter, the "Digital Communications Exclusion") (Pl. SMF ¶ 6; Simala Resp. SMF ¶ 6; Brejnak Resp. SMF ¶ 6; Ex. 1 to Usery Decl. at STPAUL000034).  The Digital Communications Exclusion applies whether or not the communication, publication or action is:

a. Composed, created, sent or performed by an "insured";

b. Part of a series of communications, publications or actions;

c. Directed at or to the person who suffered "bodily injury" or "property damage";

6

       d. Expected or intended to cause emotional, mental or physical harm
to an individual; or

       e. Intended to be public or private.

(Pl. SMF ¶ 6; Simala Resp. SMF ¶ 6; Brejnak Resp. SMF ¶ 6; Ex. 1 to Usery Decl. at STPAUL000034). *Second*, coverage is excluded for bodily injury or property damage "[a]rising out of sexual molestation, corporal punishment or physical or mental abuse." (Hereinafter, the "Mental Abuse Exclusion"). (Pl. SMF ¶ 6; Simala Resp. SMF ¶ 6; Brejnak Resp. SMF ¶ 6; Ex. 1 to Usery Decl. at STPAUL000036). *Third*, coverage is excluded for bodily injury or property damage "[w]hich is expected or intended by an 'insured' even if the resulting 'bodily injury' or 'property damage' is:

       a. Of a different kind, quality or degree than initially expected or
intended; or

       b. Sustained by a different person, entity, real or personal property,
than initially expected or intended.

(Hereinafter, the "Intentional Injury Exclusion") (Pl. SMF ¶ 6; Simala Resp. SMF ¶ 6; Brejnak Resp. SMF ¶ 6; Ex. 1 to Usery Decl. at STPAUL000033).

       By correspondence dated August 10, 2021, St. Paul offered to provide the Simala Defendants a defense subject to a reservation of rights, including the right to seek judicial determination as to whether the St. Paul Policy provides coverage for the damages alleged in the Underlying Action. (Pl. SMF ¶ 31; Simala Resp. SMF ¶ 31; Brejnak Resp. SMF ¶ 31; D.E. No. 52-12, Ex. 10 to D.E. No. 52-9 ("Darconte Decl.")). Plaintiff reiterated its reservation of rights to the Simala Defendants on February 10, 2022, and June 23, 2022. (Pl. SMF ¶¶ 32–33; Simala Resp. SMF ¶¶ 32–33; Brejnak Resp. SMF ¶¶ 32–33; D.E. Nos. 52-13–52-14, Exs. 11 & 12 to Usery Decl.). Nevertheless, Plaintiff "has been providing and at present is continuing to provide the Simala Defendants with a defense in the Underlying Action." (Pl. SMF ¶ 34; Simala Resp. SMF

¶ 34; Brejnak Resp. SMF ¶ 34).

### B.    Procedural History

Plaintiff initiated this action on September 15, 2021 seeking a judgment that it has no duty to defend or indemnify the Simala Defendants in the Underlying Action under the St. Paul Policy. (*See* Compl.).  On November 22, 2021 the Brejnak Defendants filed an Answer, and on March 31, 2022, the Simala Defendants filed an Answer.  (*See* D.E. Nos 6 & 20–22).  After the parties completed discovery, Plaintiff filed the instant motion for summary judgment.  (*See* Motion; D.E. No. 52-16 ("Mov. Br.")).  In the Motion, Plaintiff seeks a declaration that: "(a) St. Paul owes no duty to defend the Simala Defendants in connection with the Underlying Action; (b) St. Paul owes no duty to indemnify the Simala Defendants in connection with the Underlying Action; (c) there is no coverage under the St. Paul Policy for the Underlying Action; and (d) St. Paul is not liable to pay or satisfy any claims, judgments, or awards in the Underlying Action."  (Mov. Br. at 17–18).  The Motion is fully briefed.  (D.E. No. 55 ("Simala Opp. Br."); D.E. No. 56 ("Brejnak Opp. Br."); D.E. No. 59 ("Reply")).[2]

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when—in viewing the evidence and all reasonable inferences drawn from it in the light most favorable to the non-movant—a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

---

[2]    Plaintiff originally filed its motion for summary judgment on July 10, 2023.  (*See* D.E. No. 52).  On September 26, 2023, this case was reassigned from the Honorable John M. Vazquez, U.S.D.J. to the Undersigned. (D.E. No. 60).  After the case was reassigned to the Undersigned, the Undersigned directed Plaintiff to file a new notice of motion to support its motion for summary judgment.  (*See* D.E. No. 62).  Plaintiff filed a renewed notice of motion on February 2, 2024.  (*See* Motion).

(1986).  An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the non-moving party's favor.  *Id.*  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.*

At summary judgment, the Court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  *Id.* at 249. The movant bears the burden of establishing that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to present evidence that a genuine issue of material fact compels a trial.  *Id.* at 324.  To meet its burden, the nonmoving party must offer specific facts that establish a genuine issue of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.    DISCUSSION

Plaintiff maintains that it has no duty to defend or indemnify the Simala Defendants because the St. Paul Policy provides no coverage for the claims asserted against the Simala Defendants by the Brejnak Defendants in the Underlying Action.  (Mov. Br. at 8–16).  To start, Plaintiff contends that the St. Paul Policy provides no coverage to the Simala Defendants because the Underlying Action does not allege bodily injury caused by an "occurrence"—that is, "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period, in: [] 'Bodily injury'[.]"  (*Id.* at 8–9 (citing Pl. SMF ¶ 5)).  Plaintiff maintains that because there is no evidence in the record to suggest that the acts alleged in the Underlying Action were accidental, they cannot constitute an "occurrence" warranting coverage under the St. Paul Policy.  (*Id.* at 9).

Further, Plaintiff argues that, even if the Court were to find that the acts alleged in the Underlying Action do constitute an "occurrence," three exclusions within the St. Paul Policy apply

to place the Brejnak Defendants' claims against the Simala Defendants outside the scope of policy coverage.  (*Id.* at 10).  First, Plaintiff contends that the Digital Communications Exclusion takes the claims asserted against the Simala Defendants outside the scope of policy coverage because it excludes coverage for bodily injury arising out of any digital communication that is or is perceived as (i) bullying, harassing, threatening, or otherwise abusive; or (ii) causing or having caused emotional or psychological distress.  (*Id.* at 12–13).  Second, Plaintiff maintains that the Mental Abuse Exclusion defeats coverage because it excludes coverage for bodily injury and property damage "'arising out of sexual molestation, corporal punishment or physical or mental abuse.'" (*Id.* at 5 & 13–14).  Third, Plaintiff argues that the St. Paul Policy provides no coverage for the claims asserted against the Simala Defendants because the Intentional Acts Exclusion precludes coverage for bodily injury and property damage that was expected or intended by an insured.  (*Id.* at 11–12).  Lastly, Plaintiff contends that the Brejnak Defendants' derivative claims arising out Stanislav and Anna Simala's failure to prevent the wrongful acts of Evelina Simala are also excluded under the St. Paul Policy because the St. Paul Policy excludes coverage for all insureds for claims falling within the Digital Communications Exclusion, Mental Abuse Exclusion, and Intentional Acts Exclusion. (*Id.* at 14–16).  For the reasons set forth below, the Court finds that it need not decide whether the acts alleged in the Underlying Action constitute an "occurrence" under the St. Paul Policy, because even if the Court were to find that those acts do constitute an "occurrence," the Digital Communications Exclusion and Mental Abuse Exclusion both apply to place all of the claims asserted by the Brejnak Defendants against the Simala Defendants outside the scope of policy coverage in this case.

      Under New Jersey law,[3] the interpretation of an insurance policy is a question of law to be

---

[3]     All parties agree that New Jersey law applies in this case.  (*See generally* Mov. Br.; Simala Opp. Br.; Brejnak Opp. Br. & Reply).

determined "according to its plain and ordinary meaning." *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992); *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med.*, 46 A.3d 1272, 1276 (N.J. 2012). Where the terms of the policy are ambiguous and there is doubt regarding the existence of coverage, the ambiguity is ordinarily resolved in favor of the insured. *See Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.*, 843 A.2d 1094, 1103 (N.J. 2004). However, where the language of the policy is clear and unambiguous, "the court is bound to enforce the policy as it is written." *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 638 A.2d 924, 927 (N.J. Super. Ct. App. Div. 1994). The court "should not write for the insured a better policy of insurance than the one purchased." *Buczek v. Continental Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004) (citing *Vassiliu v. Daimler Chrysler Corp.*, 839 A.2d 863, 867 (N.J. 2004)).

"[W]hen disputes arise between the insured and insurer, the duty of an insurer to defend is generally determined by a side-by-side comparison of the policy and the complaint, and is triggered when the comparison demonstrates that if the complaint's allegations were sustained, an insurer would be required to pay the judgment." *Wear v. Selective Ins. Co.*, 190 A.3d 519, 527 (N.J. Super. Ct. App. Div. 2018) (citation omitted). "'In making that comparison, it is the nature of the claim asserted, rather than the specific details of the incident or the litigation's possible outcome, that governs the insurer's obligation.'" *Id.* (quoting *Flomerfelt v. Cardiello*, 997 A.2d 991, 998 (N.J. 2010)). "The duty to defend is not abrogated by the fact that the claim may have no merit and cannot be maintained against the insured, either in law or in fact, because the cause of action is groundless, false, or fraudulent." *Sears Roebuck & Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 774 A.2d 526, 537–38 (N.J. Super. Ct. App. Div. 2001) (citation omitted). "If the complaint is ambiguous, doubts should be resolved in favor of the insured and thus in favor of coverage." *Voorhees*, 607 A.2d at 1259 (citing *Cent. Nat'l Ins. v. Utica Nat'l Ins.*, 557 A.2d 693,

694 (N.J. Super. Ct. App. Div. 1989)). The analysis of the allegations is not limited to the complaint itself, but rather "facts outside the complaint may trigger the duty to defend." *SL Indus., Inc. v. Am. Motorists Ins.*, 607 A.2d 1266, 1272 (N.J. 1992).

In general, exclusionary clauses within an insurance policy are narrowly construed. *Flomerfelt*, 997 A.2d at 996–97. The insurer has the burden of bringing the case within the exclusion. *Am. Motorists Ins. Co. v. L-C-A Sales Co.*, 713 A.2d 1007, 1013 (N.J. 1998). However, "exclusions are presumptively valid and will be given effect if 'specific, plain, clear, prominent, and not contrary to public policy.'" *Princeton Ins. Co. v. Chunmuang*, 698 A.2d 9, 17 (N.J. 1997) (citing *Doto v. Russo*, 659 A.2d 1371, 1378 (N.J. 1995)). Courts must be careful "not to disregard the 'clear import and intent' of a policy's exclusion." *Flomerfelt*, 997 A.2d at 997 (quoting *Westchester Fire Ins. Co. v. Cont'l Ins. Cos.*, 312 A.2d 664, 671 (N.J. Super. Ct. App. Div. 1973)). Far-fetched interpretations of a policy exclusion are insufficient to create an ambiguity requiring coverage. *Stafford v. T.H.E. Ins. Co.*, 706 A.2d 785, 789 (N.J. Super. Ct. App. Div. 1998).

The Court examines the applicability of the Digital Communications Exclusion and the Mental Abuse Exclusion to the claims asserted by the Brejnak Defendants against the Simala Defendants in the Underlying Action in turn.

### A. The Digital Communications Exclusion

As set forth above, Plaintiff argues that it has no duty to defend or indemnify the Simala Defendants because the Digital Communications Exclusion within the St. Paul Policy applies to take the Brejnak Defendants' claims against the Simala Defendants in the Underlying Action outside the scope of policy coverage. (Mov. Br. at 12–13). More specifically, Plaintiff points out that the Digital Communications Exclusion excludes coverage for bodily injury arising out of any digital communication that is or is perceived as (i) bullying, harassing, threatening, or otherwise

abusive, or (ii) causing or having caused emotional or psychological distress. (*Id.* at 12). And here, because each cause of action asserted by the Brejnak Defendants "grows out of" the digital messages sent by Evelina Simala to Monika Brejnak that were allegedly bullying and harassing, Plaintiff maintains that the Digital Communications Exclusion applies to take all claims asserted against Evelina Simala and her parents outside the scope of policy coverage. (*Id.* at 13). In opposition, though the Simala Defendants and Brejnak Defendants both generally contend that policy exclusions should be narrowly construed, they set forth no argument to explain why the Digital Communications Exclusion should not bar coverage in the Underlying Action. (*See generally* Simala Opp. Br. & Brejnak Opp. Br.). Instead, the Simala Defendants argue that the exclusions within the St. Paul Policy are ambiguous because it is unclear, under the policy, whether exclusions for acts by *one* insured—Evelina Simala—extend to preclude coverage for *all* insured's—including her parents. (Simala Opp. Br. at 13–14). Because of this ambiguity, the Simala Defendants contend that that the exclusion must be construed against the insurer so that reasonably anticipated coverage is provided. (*Id.* at 14). Further, in opposition, the Brejnak Defendants generally contend that the exclusions in the St. Paul Policy should not bar coverage because it is well-settled that if a complaint includes multiple or alternative causes of action, the duty to defend will attach as long as any of them would be a covered claim, and continues until all of the covered claims have been resolved. (Brejnak Opp. Br. at 18). Here, the Brejnak Defendants contend that St. Paul's duty to defend also turns on whether Anna Simala and Stanislav Simala can be found liable based on negligent supervision—a theory independent of Evelina Simala's treatment of Monika Brejnak. (*Id.* at 19). As such, because the Underlying Action contains multiple theories of recovery or claims against the Simala Defendants, some of which would be arguably covered, the Brejnak Defendants contend that Plaintiff's duty to defend must continue

until all of the covered and/or potentially covered claims have been resolved. (*Id.*).  For the reasons set forth below, the Court agrees with Plaintiff and finds that the Digital Communications Exclusion within the St. Paul Policy applies to take *all* of the Brejnak Defendants' claims against the Simala Defendants in the Underlying Action outside the scope of policy coverage.

To start, the Court finds that the factual allegations made against Evelina Simala place all claims asserted against Evelina Simala in the Underlying Action within the Digital Communications Exclusion.  As set forth above, the Digital Communications Exclusion within the St. Paul Policy excludes coverage for bodily injury or property damage "*arising out* of any oral, written, electronic, digital or other means of communication, publication or physical action that:"

> a. Is directed at or to an individual or group of individuals; and
>
> b. Includes content, material or action that is or is perceived as:
>
> (1)  Bullying, harassing, degrading, intimidating, threatening, tormenting or otherwise abusive; or
>
> (2) Causing or having caused emotional or psychological distress or fear of imminent harm or death.

(Pl. SMF ¶ 6; Simala Resp. SMF ¶ 6; Brejnak Resp. SMF ¶ 6; Ex. 1 to Usery Decl. at STPAUL000034).  The New Jersey Supreme Court has established that the phrase "arising out of," as used in a liability insurance policy, means that the injury "'originates in,' 'grows out of or has a 'substantial nexus' to the excluded act.'"  *Flomerfelt*, 997 A.2d at 1005.  Here, every cause of action alleged by the Brejnak Defendants against Evelina Simala in the Underlying Action "aris[es] out of," and "originates in" the "digital" communications Evelina Simala sent to Monika Brejnak, which were allegedly "bullying, harassing, degrading, intimidating, [and] threatening," and which resulted in "emotional or psychological distress," and, ultimately, in Monika Brejnak's "death."  *Flomerfelt*, 997 A.2d at 1004–05; (Ex. 1 to Usery Decl. at STPAUL000034).  More

14

specifically, in the Underlying Action, the Brejnak Defendants have alleged that in the months leading up to Monika Brejnak's death, Evelina Simala "would, via *digital messaging*, consistently *harass, bully, and demean*" Monika Brejnak "with *intimidating*, offensive comments related to her disability, her looks, her body, and her family, in addition to *threatening* Monika Brejnak with physical violence." (Underlying FAC ¶ 18 (emphasis added); Pl. SMF ¶ 24; Simala Resp. SMF ¶ 24; Brejnak Resp. SMF ¶ 24). The Brejnak Defendants allege that that as a direct and proximate result of Evelina Simala's continued harassing comments, Monika Brejnak "suffered humiliation, mental anguish, emotional distress, psychological trauma, and, ultimately, took her own life." (Underlying FAC ¶ 24; Pl. SMF ¶ 27; Simala Resp. SMF ¶ 27; Brejnak Resp. SMF ¶ 27). In other words, but for the digital messages sent by Evelina Simala to Monika Brejnak that allegedly were or were at least perceived as bullying, harassing, degrading, intimidating, and threatening, the Brejnak Defendants would not have a cause of action against Evelina Simala. As such, the Brejnak Defendants' allegations against Evelina Simala in the Underlying Action fall squarely within the Digital Communications Exclusion, and indeed neither the Simala Defendants nor the Brejnak Defendants argue otherwise. To be sure, in opposition, the Simala Defendants and Brejnak Defendants contend that there is significant evidence in the record to show that the messages sent by Evelina Simala to Monika Brejnak were never *intended* to cause injury. (*See, e.g.*, Simala Opp. Br. at 10 (pointing out that in deposition Evelina Simala testified that she never thought the text messages she sent would be hurting Monika Brejnak); Brejnak Opp. Br. at 12 (stating that "[i]n her testimony, E[velina] Simala continuously stated that she was 'kidding,' 'joking,' 'playing around,' and that she didn't intend to hurt Monika Brejnak.")). However, the St. Paul Policy explicitly provides that the Digital Communications Exclusion applies whether or not the communication, publication or action is "*Expected* or *intended* to cause emotional, mental or

physical harm to an individual." (Ex. 1 to Usery Decl. at STPAUL000034). As such, any disputes at to Evelina Simala's subjective intent in sending the disputed digital messages to Monika Brejnak cannot preclude the application of the Digital Communications Exclusion. Accordingly, a plain and ordinary reading of the Digital Communications Exclusion and the allegations in the Underlying Action Complaint compels the conclusion that the Digital Communications Exclusion places all claims asserted against Evelina Simala in the Underlying Action outside the scope of policy coverage. *See Wear*, 190 A.3d at 527 ("[W]hen disputes arise between the insured and insurer, the duty of an insurer to defend is generally determined by a side-by-side comparison of the policy and the complaint, and is triggered when the comparison demonstrates that if the complaint's allegations were sustained, an insurer would be required to pay the judgment."); *Princeton Ins. Co.*, 698 A.2d at 17 (emphasizing that "exclusions are presumptively valid and will be given effect if 'specific, plain, clear, prominent, and not contrary to public policy.'").

Further, the Court finds that all claims asserted against Stanislav Simala and Anna Simala in the Underlying Action, which include, among others, negligent supervision claims, likewise fall within the purview of the Digital Communications Exclusion. Again, the Digital Communications Exclusion within the St. Paul Policy excludes coverage for bodily injury *arising out of* any digital communication that is or is perceived as (i) bullying, harassing, degrading, intimidating, threatening, tormenting, or otherwise abusive, or (ii) causing or having caused emotional or psychological distress or fear of imminent harm or death. (Pl. SMF ¶ 6; Simala Resp. SMF ¶ 6; Brejnak Resp. SMF ¶ 6; Ex. 1 to Usery Decl. at STPAUL000034). As set forth above, the New Jersey Supreme Court has established that the phrase "arising out of," as used in a liability insurance policy, means that the injury "'originates in,' 'grows out of or has a 'substantial nexus' to the excluded act.'" *Flomerfelt*, 997 A.2d at 1005. As described, the Brejnak Defendants allege

16

that Evelina Simala's parents, Stanislav Simala and Anna Simala knew or should have known that injury to Monika Brejnak would likely or probably result from Evelina Simala's conduct and were reckless, or at least negligent, in failing to discharge their parental and supervisory duties which resulted in Evelina Simala's conduct and Monika Brejnak's subsequent injuries and death. (Underlying FAC ¶¶ 31 & 51–59; Pl. SMF ¶ 26; Simala Resp. SMF ¶ 26; Brejnak Resp. SMF ¶ 26). As a result, the Brejnak Defendants have asserted causes of action sounding in (i) civil liability for bias crimes pursuant to N.J.S.A. 2A:53A-21, (ii) intentional infliction of emotional distress, (iii) negligent infliction of emotional distress, (iv) negligent parental supervision, (v) wrongful death pursuant to N.J.S.A. 2A:31-1, *et seq.*, and (vi) survivorship pursuant to N.J.S.A. 2A:15-3. (Underlying FAC ¶¶ 27–72). Here, the Court finds that but for the alleged bullying, harassing, degrading, intimidating, and threatening," digital messages sent by Evelina Simala to Monika Brejnak that allegedly resulted in "emotional or psychological distress," and, ultimately, in Monika Brejnak's "death" (*id.* ¶¶ 18–24), the Brejnak Defendants would not have a cause of action against any of the Simala Defendants, including Anna Simala and Stanislav Simala. Simply put, the claims against Evelina Simala's parents, Anna Simala and Stanislav Simala, for failing to supervise Evelina Simala or prevent personal injury to Monika Brejnak originated in, grew out of, or had a substantial nexus to the digital messages sent by Evelina Simala to Monika Brejnak. In fact, other courts have held that related claims asserted against parents, including negligent supervision claims like those asserted in this case, fall within policy exclusions that exclude "bodily injury" "arising out of" specific conduct because such claims "arise from" a clear exclusion in the homeowners' policy. *See, e.g.*, *A.K. v. Fid. & Guar. Ins. Underwriters, Inc.*, No. 21-20717, 2023 WL 6231147, at *5 (D.N.J. Aug. 14, 2023) (finding that claims against child's parents for failing to supervise or prevent personal injury to child fell within policy exclusion for bodily injury

arising out of sexual molestation, or physical or mental abuse because such claims "ar[o]se from" a clear exclusion in the homeowners' policy); *P.D. v. Germantown Ins. Co.*, No. A-3829-12T2, 2014 WL 10102329, at *10 (N.J. Super. Ct. App. Div. July 20, 2015) ("On its face, the underlying complaint against plaintiffs alleging negligent supervision arises out of the exclusion for sexual molestation. The underlying cause of action seeks compensatory damages from plaintiffs because they negligently performed their duty as parents to supervise Matthew and prevent him from sexually molesting or assaulting Ann. This leaves no ambiguity. The negligent supervision claim arises from a clear exclusion in the policy."). Accordingly, a plain and ordinary reading of the Digital Communications Exclusion and the allegations in the Underlying Action Complaint compels the conclusion that the Digital Communications Exclusion places all claims asserted against Anna Simala and Stanislav Simala in the Underlying Action outside the scope of policy coverage.

Further, the Court finds that all claims asserted against Stanislav Simala and Anna Simala in the Underlying Action fall within the purview of the Digital Communications Exclusion because the St. Paul Policy excludes coverage for *all* insureds for claims falling within the Digital Communications Exclusion. More specifically, as set forth above, the Digital Communications Exclusion applies whether or not the communication, publication or action is: "Composed, created, sent or performed by *an 'insured*.'" (Pl. SMF ¶ 6 (emphasis added); Simala Resp. SMF ¶ 6; Brejnak Resp. SMF ¶ 6; Ex. 1 to Usery Decl. at STPAUL000034). In *Villa v. Short*, 947 A.2d 1217, 1219 (N.J. 2008), the New Jersey Supreme Court interpreted similar exclusionary language and held that the phrase "an insured" in insurance policy exclusions excludes *all insureds* from coverage for damages caused by the excluded acts of an insured. Specifically, there, the plaintiff was sexually abused when she was a young child by her mildly intellectually disabled uncle. *Villa*,

18

947 A.2d at 1219.  When plaintiff became an adult, she filed a suit for damages, naming not only her uncle as a defendant, but her grandparents with whom he resided at the time, contending that they had negligently supervised their son.  *Id.*  The grandparents maintained a homeowners' liability policy with Allstate Insurance Company, but Allstate contended there was no coverage for the grandparents on the basis of the following exclusionary clause: "We do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by *an insured* person."  *Id.* at 1219–20 (emphasis added).  The court rejected the grandparents' contention that the policy language was ambiguous, which would entitle them coverage under the well-settled principles that ambiguities in an insurance policy must be construed in favor of the insured and that exclusionary clauses should be narrowly construed.  *Id.* at 1223–24.  And in rejecting the insureds' argument, the court stated that it agreed "that the phrase 'an insured' in insurance policy exclusions is not ambiguous" but rather excludes "all insureds from coverage for damages caused by the intentional or criminal acts of an insured."  *Id*. at 1223.  Like the exclusion at issue in *Villa*, the Digital Communications Exclusion likewise excludes coverage for bodily injury arising out of any digital communication that is or is perceived as (i) bullying, harassing, degrading, intimidating, threatening, tormenting, or otherwise abusive, or (ii) causing or having caused emotional or psychological distress or fear of imminent harm or death whether or not the communication, publication or action is: "[c]omposed, created, sent or performed by *an 'insured.*'"  (Pl. SMF ¶ 6 (emphasis added); Simala Resp. SMF ¶ 6; Brejnak Resp. SMF ¶ 6; Ex. 1 to Usery Decl. at STPAUL000034).  Accordingly, in light of *Villa*, the Court finds that the Digital Communications Exclusion excludes coverage for *all* insureds when bodily injury arises out of the digital communication of any insured that is or is perceived as (i) bullying, harassing, degrading, intimidating, threatening, tormenting, or otherwise

abusive, or (ii) causing or having caused emotional or psychological distress or fear of imminent harm or death. As a result, coverage for all of the Simala Defendants is excluded due to Evelina Simala's bullying, harassing, degrading, intimidating, and threatening, digital communications that were sent to Monika Brejnak. *See Argent v. Brady*, 901 A.2d 419, 422–24 (N.J. Super. Ct. App. Div. 2006) (denying coverage under the policy's business pursuits exclusion that excluded coverage for injury "[a]rising out of or in connection with a business engaged in by an insured" and finding no ambiguity in the phrase "an insured," concluding that the policy "exclude[d] from coverage any liability resulting from the business pursuits of a covered person, regardless of whether the person sued was engaged in those business pursuits.").

The Brejnak Defendants' and Simala Defendants' remaining arguments in opposition do not lead this Court to reach a contrary conclusion. To start, the Simala Defendants argue that the exclusions within the St. Paul Policy are ambiguous because the St. Paul Policy contains a severability clause that provides: "This insurance policy applies separately to 'each insured.' This Liability-Condition will not increase our limit of liability for any one 'occurrence.'" (Simala Opp. Br. at 13–14; Ex. 1 to Usery Decl. at STPAUL000038). As such, they contend that it is unclear whether exclusions for acts by *one* insured—Evelina Simala—extend to preclude coverage for *all* insured's—including her parents—under the policy. (Simala Opp. Br. at 13–14). Because of this ambiguity, the Simala Defendants contend that they are entitled to coverage under the well-settled principles that ambiguities in an insurance policy must be construed in favor of the insured and that exclusionary clauses should be narrowly construed. (*Id.* at 14). The Court is not convinced. The Appellate Division's decision in *Argent v. Brady*, 901 A.2d 419 (N.J. Super. Ct. App. Div. 2006) is instructive on this point. In *Argent*, the plaintiffs filed an action against the Bradys and their son, seeking damages as a result of the plaintiffs' infant child being bitten by a dog allegedly

20

owned by the Bradys' son. *Argent*, 901 A.2d at 421–22. The Bradys, who operated a day care center, sought coverage under their homeowner's policy with New Jersey Manufacturers Insurance Company ("NJM"). *Id.* NJM denied coverage under the policy's business pursuits exclusion that excluded coverage for injury "*[a]rising out of* or in connection with a business engaged in by *an insured*." *Id.* at 422 (emphasis added). Coverage was even denied as to the son even though there was no evidence that the son, who allegedly owned the dog, was engaged in the day care center business operated by his mother, Linda Brady. *Id.* The Appellate Division agreed with NJM, finding that the business pursuits exclusion denied the Bradys coverage under the policy. In finding that the policy did not provide coverage to the son, the court noted that there was no ambiguity in the phrase "an insured" as used in the business pursuits exclusion and concluded that, based on that language, the policy "exclude[d] from coverage any liability resulting from the business pursuits of a covered person, regardless of whether the person sued was engaged in those business pursuits." *Id.* at 424. The insureds nevertheless claimed that ambiguity was introduced into the policy by a severability clause which provided as follows: "[t]his insurance applies separately to each insured. This condition will not increase our limit of liability for any one occurrence." *Id.* at 422–25. The Appellate Division rejected this argument, holding that the existence of a severability clause did not affect the clearly worded exclusion in that case. In reaching that decision, the court noted that "if a severability clause is given effect, despite an exclusion of coverage for specifically described conduct by 'an insured' . . . then the language of the exclusion as it relates to 'an insured' or 'any insured' is robbed of any meaning." *Id.* at 426. Further, the court noted that the purpose of the severability clause was solely to render the coverage actually provided "by the insuring provisions of the policy applicable to all insureds equally, up to coverage limits." *Id.* at 426–27. It noted that the severability clause is not denominated a

21

"coverage provision," and it "would be unreasonable to find that it operated independently in that capacity to increase the insurance afforded under the insuring provisions of the policy, or to partially nullify existing coverage exclusions." *Id.* at 427 ("[T]he purpose of severability clauses is to spread protection, to the limits of coverage, among all of the . . . insureds. The purpose is not to negate bargained-for exclusions which are plainly worded."). Further, the court found that the absence of a direct reference to the inapplicability of the severability clause within the business pursuits exclusion did not render the exclusion ambiguous. *Id.* at 428. As such, the court found that the severability clause did not create an ambiguity that would require a construction of the policy so as to negate the business pursuits exclusion and afford coverage to the son. *Id.*

The Court finds that the same conclusion is warranted in this case. Like the business pursuits exclusion in *Argent* that excluded coverage for injury "[a]rising out of or in connection with a business engaged in by an insured" *id.* at 422, the Digital Communications Exclusion within the St. Paul Policy also excludes coverage for bodily injury "*arising out* of" any digital communication that is or is perceived as (i) bullying, harassing, degrading, intimidating, threatening, tormenting or otherwise abusive, or (ii) causing or having caused emotional or psychological distress or fear of imminent harm or death whether or not the communication, publication or action is: "Composed, created, sent or performed by *an 'insured*.'" (Pl. SMF ¶ 6 (emphasis added); Simala Resp. SMF ¶ 6; Brejnak Resp. SMF ¶ 6; Ex. 1 to Usery Decl. at STPAUL000034). As set forth above, the phrase 'arising out of,' which frequently appears in insurance policies, has been interpreted expansively by New Jersey courts in insurance coverage litigation to mean that the injury "'originates in,' 'grows out of or has a 'substantial nexus' to the excluded act.'" *Flomerfelt*, 997 A.2d at 1005. Accordingly because the claims against Anna Simala and Stanislav Simala, for failing to supervise Evelina Simala or prevent personal injury to

Monika Brejnak, originated in, grew out of, or had a substantial nexus to the digital messages sent by Evelina Simala to Monika Brejnak that were bullying and harassing, a plain and ordinary reading of the Digital Communications Exclusion compels the conclusion that the Digital Communications Exclusion places all claims asserted against Anna Simala and Stanislav Simala in the Underlying Action outside the scope of policy coverage. Further, because the Digital Communications Exclusion applies whether or not the communication, publication or action is: "Composed, created, sent or performed by *an 'insured'*" (Ex. 1 to Usery Decl. at STPAUL000034), that exclusion precludes coverage for all insureds, including Anna Simala and Stanislav Simala, when bodily injury arises out of the digital communication that is or is perceived as bullying, or harassing, of any insured, such as Evelina Simala in this case. *Villa*, 947 A.2d at 1223–24. And though the St. Paul Policy contains a severability clause, that severability clause does not create ambiguity as to whether exclusions for acts by *one* insured extend to preclude coverage for *all* insured's under the policy. (Simala Opp. Br. at 13–14; Ex. 1 to Usery Decl. at STPAUL000038). As the Appellate Division in *Argent* noted, "the purpose of severability clauses is to spread protection, to the limits of coverage, among all of the . . . insureds. The purpose is not to negate bargained-for exclusions which are plainly worded." *Argent*, 901 A.2d at 427 (internal quotation marks and citation omitted). And like in *Argent*, the absence of a direct reference to the inapplicability of the severability clause within the Digital Communications Exclusion does not render the exclusion ambiguous. *Id.* at 428. Accordingly, the Court will not rely on the severability clause to negate the plainly worded Digital Communications Exclusion. *See Villa*, 947 A.2d at 1224–25 (finding that a severability clause does not inject ambiguity or remove the joint obligation imposed by intentional and criminal acts exclusions referring to either "an insured" or "any insured").

Next, the Brejnak Defendants contend that even though Plaintiff argues that it is entitled to summary judgment based on its unilateral declaration that every cause of action in the Underlying Action arises out of Evelina Simala's treatment of Monika Brejnak which is allegedly precluded by the Digital Communications Exclusion, it is well settled that if a complaint includes multiple or alternative causes of action, the duty to defend will attach as long as any of them would be a covered claim and continues until all of the covered claims have been resolved.  (Brejnak Opp. Br. at 17–18).  Citing to the New Jersey Supreme Court's decision in *Salem Group v. Oliver*, 607 A.2d 138 (N.J.1992), the Brejnak Defendants argue that where there are concurrent causes of an injury following an accident, and one of the separate causes of action alleged in the underlying complaint would be covered under the policy, the insurer will be held to its duty to defend the insured.  (*Id.* at 18–19).  Here, the Brejnak Defendants contend that Plaintiff's duty to defend turns on whether Anna Simala and Stanislav Simala can be found liable based on a theory independent of Evelina Simala's treatment of Monika Brejnak.  (*Id.* at 19).  Specifically, they assert that the Underlying Action's causes of action are not solely based on Evelina Simala's conduct, but also on her parents' negligent supervision of her actions and behavior over an extended period of time.  (*Id.*).  As such, because the Underlying Action contains multiple theories of recovery or claims against the Simala Defendants, some of which would be arguably covered under the St. Paul Policy, the Brejnak Defendants contend that Plaintiff's duty to defend must continue until all of the covered and/or potentially covered claims have been resolved.  (*Id.*).  The Court is not convinced.  Though the Brejnak Defendants rely heavily on the New Jersey Supreme Court's decision in *Salem Group v. Oliver*, 607 A.2d 138 (N.J.1992) in raising the aforementioned argument, their reliance on that case is misplaced.

*Salem Group* involved a carrier's duty to defend under a homeowner's policy where the

plaintiff, a minor, consumed alcoholic beverages provided by the insured and was thereafter injured while operating the insured's all-terrain vehicle (ATV). *See Salem Group*, 607 A.2d at 139. The plaintiff's underlying complaint alleged social host liability, against the insured, for providing alcoholic beverages to his minor nephew. *Id.* The insurer invoked the homeowner's insurance policy's automobile exclusion on the sole basis that a motor vehicle was involved in the accident. *Id.* The Supreme Court of New Jersey found that the carrier had a general obligation to defend against the social-host liability claim despite the fact that "operation of an all-terrain vehicle . . . constitute[d] an additional cause of the injury" to plaintiff, observing that:

> No one disputes that insurers are generally obligated to defend their insureds on social host claims. The critical question is whether the insurer can avoid that obligation because a separate excluded risk, the operation of an all-terrain vehicle (ATV), constitutes an additional cause of the injury. We find that the insurer remains obligated to defend the covered risk. It may not avoid that obligation simply because the operation of an ATV constitutes an additional cause of the injury.

*Id.* The Supreme Court specifically distinguished cases, such as *Salem Group*, where the insured's liability for personal injuries could be premised on a theory wholly independent of negligent supervision involving an automobile (i.e., social host liability), from those cases, where the plaintiff's theory of liability is based solely on the insured's failure to exercise sufficient control and supervision over a child in the operation of a motor vehicle. *Id.* at 139–40. In the latter cases, the New Jersey Supreme Court recognized the justification for excluding coverage under the homeowner's policy to the parent because "[t]the negligent entrustment or supervision cannot be isolated from the ownership and operation of the insured automobile." *Id.* at 140. In contrast, the court noted that in *Salem Group*, the serving of alcohol to a minor did "not depend on the insured's ownership of a motor vehicle or its entrustment to another. One need not own a motor vehicle to serve alcohol to another." *Id.*

The Court finds that the instant case is less analogous to *Salem Group* and more analogous to those cases where the plaintiff's theory of liability is based solely on the insured's failure to exercise sufficient control and supervision over a child that engages in conduct that is excluded under a relevant insurance policy. As described, the Brejnak Defendants allege that Evelina Simala's parents, Stanislav Simala and Anna Simala, should be held liable because they knew or should have known that injury to Monika Brejnak would likely or probably result from Evelina Simala's conduct and were reckless, or at least negligent, in failing to discharge their parental and supervisory duties which resulted in Evelina Simala's conduct and Monika Brejnak's subsequent injuries and death. (Underlying FAC ¶¶ 31 & 51–59; Pl. SMF ¶ 26; Simala Resp. SMF ¶ 26; Brejnak Resp. SMF ¶ 26). As Plaintiff points out (Reply at 10), the causes of action asserted against Anna Simala and Stanislav Simala are necessarily intertwined with the alleged bullying and harassment of Monika Brejnak by Evelina Simala. Unlike in *Salem Group*, the theories of liability asserted against Anna Simala and Stanislav Simala are based solely on their failure to exercise sufficient control and supervision over Evelina Simala's conduct towards Monika Brejnak, which as described above, falls within the Digital Communications Exclusion of the St. Paul Policy. In other words, the alleged negligent supervision of Evelina Simala by Anna Simala and Stanislav Simala cannot be isolated from Evelina Simala's conduct, which included sending "digital" communications to Monika Brejnak, that allegedly were or were at least perceived as bullying, harassing, degrading, intimidating, and threatening, and which resulted in emotional or psychological distress, and, ultimately, in Monika Brejnak's death. (Pl. SMF ¶¶ 24–27; Simala Resp. SMF ¶¶ 24–27; Brejnak Resp. SMF ¶¶ 24–27; Underlying FAC ¶¶ 18–24). As such, unlike the facts in *Salem Group*, this case does not involve a discrete act of negligence (such as service of alcohol to a minor) unrelated to the bullying and harassing digital communications sent by

Evelina Simala to Monika Brejnak that would constitute a dual cause of the loss of Monika Brejnak's life. *See Montville Twp. Bd. of Educ. v. Zurich Am. Ins. Co.*, No. 16-4466, 2017 WL 2380175, at *10 (D.N.J. June 1, 2017) ("[I]t does not matter, as Montville frequently suggests, that Fennes actually committed the abusive acts while Montville only created the risk that those acts would occur. That Child M seeks to recover from *more than one defendant* based on *more than one theory of liability* is not the same thing as saying that *more than one cause*, one covered and one not, combined to inflict an indivisible injury." (emphasis in original)); *Memorial Properties, LLC v. Zurich Am. Ins. Co.*, 46 A.3d 525, 528–30 (N.J. 2012) (finding that claims against the manager and owner of a cemetery and crematory, who were accused of intentionally or negligently allowing a dentist and a "master embalmer" to dissect, harvest, and sell parts of plaintiffs' decedents' corpses, fell within scope of an exclusionary clause that denied coverage for claims of bodily injury "arising out of" the "improper handling" of human remains because the allegation that that they knowingly played an enabling role in the illegal harvesting scheme fell "squarely within the parameters of the exclusionary clause" and so, too, "did the negligence claim, because 'if, as alleged by the families of decedents, negligence in the care or custody of the decedents' remains exposed those remains to illegal harvesting, then the emotional harm consequently inflicted upon the families would '*arise out of*' [defendants'] negligence" in improperly handling decedents' bodies).

In sum, the Court finds that the terms of the Digital Communications Exclusion are clear and unambiguous, and this Court will not engage in a strained construction to support coverage. *Flomerfelt*, 997 A.2d at 996. As such, the Court finds that the Digital Communications Exclusion within the St. Paul Policy applies to take *all* of the Brejnak Defendants' claims against the Simala Defendants in the Underlying Action outside the scope of policy coverage.

**B.     The Mental Abuse Exclusion**

The Court also finds that the Mental Abuse Exclusion within the St. Paul Policy applies to take *all* of the Brejnak Defendants' claims against the Simala Defendants in the Underlying Action outside the scope of policy coverage.

As set forth above, Plaintiff argues that it has no duty to defend or indemnify the Simala Defendants because, in addition to the Digital Communications Exclusion, the Mental Abuse Exclusion within the St. Paul Policy applies to take the Brejnak Defendants' claims against the Simala Defendants in the Underlying Action outside the scope of policy coverage. (Mov. Br. at 13–14). More specifically, Plaintiff points out that the Mental Abuse Exclusion excludes coverage for bodily injury or property damage "[a]rising out of sexual molestation, corporal punishment or physical or mental abuse." (Pl. SMF ¶ 6; Simala Resp. SMF ¶ 6; Brejnak Resp. SMF ¶ 6; Ex. 1 to Usery Decl. at STPAUL000036). And here, because the Underlying Action alleges that the Simala Defendants engaged in intimidation and harassment of Monika Brejnak resulting in "humiliation, mental anguish, emotional distress, [and] psychological trauma," Plaintiff contends that those alleged acts, which form the basis for each cause of action asserted by the Brejnak Defendants, are undoubtedly excluded from coverage under the Mental Abuse Exclusion. (Mov. Br. at 14). In opposition, though the Simala Defendants and Brejnak Defendants both generally contend that policy exclusions should be narrowly construed, they set forth no argument to explain why the Mental Abuse Exclusion should not bar coverage in the Underlying Action. (*See generally* Simala Opp. Br. & Brejnak Opp. Br.). Instead, the Simala Defendants argue that the exclusions within the St. Paul Policy are generally ambiguous because the St. Paul Policy contains a severability clause that provides that the insurance policy applies separately to each insured. (Simala Opp. Br. at 13–14). As such, they contend that it is unclear whether exclusions for acts by *one* insured—

28

Evelina Simala—extend to preclude coverage for *all* insured's—including her parents—under the policy. (*Id.* at 14). Because of this ambiguity, the Simala Defendants contend that the Court should apply a meaning to the exclusions in the policy that support coverage. (*Id.*). Further, in opposition, the Brejnak Defendants generally contend that the exclusions in the St. Paul Policy should not bar coverage because it is well settled that if a complaint includes multiple or alternative causes of action, the duty to defend will attach as long as any of them would be a covered claim and continues until all of the covered claims have been resolved. (Brejnak Opp. Br. at 18). Here, the Brejnak Defendants contend that St. Paul's duty to defend also turns on whether Anna Simala and Stanislav Simala can be found liable based on negligent supervision—a theory independent of Evelina Simala's treatment of Monika Brejnak. (*Id.* at 19). As such, because the Underlying Action contains multiple theories of recovery or claims against the Simala Defendants, some of which would be arguably covered, the Brejnak Defendants contend that Plaintiff's duty to defend must continue until all of the covered and/or potentially covered claims have been resolved. (*Id.*). For the reasons set forth below, the Court agrees with Plaintiff and finds that the Mental Abuse Exclusion within the St. Paul Policy also applies to take *all* of the Brejnak Defendants' claims against the Simala Defendants in the Underlying Action outside the scope of policy coverage.

To start, the Court finds that the factual allegations made against Evelina Simala place all claims asserted against Evelina Simala in the Underlying Action within the Mental Abuse Exclusion. As set forth above, the Mental Abuse Exclusion within the St. Paul Policy excludes coverage for bodily injury or property damage "[a]rising out of sexual molestation, corporal punishment or physical or *mental abuse*." (Ex. 1 to Usery Decl. at STPAUL000036). The policy does not appear to define "mental abuse." (*See generally id.*). Accordingly, the term "mental abuse" is to be given its ordinary and well-understood meaning. *President v. Jenkins*, 853 A.2d

247, 256 (N.J. 2004).  Black's Law Dictionary provides some insight with its definition of 'emotional abuse': 'Physical or verbal abuse that causes or could cause serious emotional injury—Also termed' *mental abuse; psychological abuse.*'"  Black's Law Dictionary 12 (12th ed. 2024); *see also President*, 853 A.2d at 256 (interpreting term in insurance contract that was not explicitly defined according to its ordinary meaning, including dictionary definition); *Amica Mut. Ins. Co. v. Vernon*, No. 14-0235, 2015 WL 1757642, at *3 (D. Id. Apr. 17, 2015) (interpreting "mental abuse" in insurance policy in accordance with the Black's Law Dictionary definition of "'emotional abuse': 'Physical or verbal abuse that causes or could cause serious emotional injury—Also termed' *mental abuse; psychological abuse.*'").  Further, the Appellate Division has held that claims alleging invasion of privacy due to sexually oriented comments and questions that caused plaintiff *mental suffering, shame, and humiliation* qualified as "mental abuse" within an insurance policy.  *Miller v. McClure*, 742 A.2d 564, 571 (N.J. Super. Ct. App. Div. 1998), *aff'd*, 745 A.2d 1162 (N.J. 1999)  Against that backdrop, the Court finds that the factual allegations made against Evelina Simala place all claims asserted against Evelina Simala in the Underlying Action within the Mental Abuse Exclusion.  Here, every cause of action alleged by the Brejnak Defendants against Evelina Simala in the Underlying Action arises out of, and originates in the digital communications Evelina Simala sent to Monika Brejnak, that were allegedly bullying, harassing, degrading, intimidating, and threatening, and which resulted in "humiliation, *mental anguish*, *emotional distress*, *psychological trauma*," and, ultimately, in Monika Brejnak's death. *Flomerfelt*, 997 A.2d at 1004–05; (Underlying FAC ¶¶ 18 & 24–25; Pl. SMF ¶ 27; Simala Resp. SMF ¶ 27; Brejnak Resp. SMF ¶ 27).  More specifically, in the Underlying Action, the Brejnak Defendants have alleged that in the months leading up to Monika Brejnak's death, Evelina Simala "would, via digital messaging, consistently harass, bully, and demean" Monika Brejnak "with

intimidating, offensive comments related to her disability, her looks, her body, and her family, in addition to threatening Monika Brejnak with physical violence." (Underlying FAC ¶ 18). The Brejnak Defendants allege that that as a "direct and proximate result of Evelina Simala's continued intimidating and harassing comments, Monika Brejnak suffered humiliation, *mental anguish, emotional distress, psychological trauma*, and, ultimately, took her own life." (*Id.* ¶ 24). In other words, but for the alleged mental anguish, emotional distress, and psychological trauma, inflicted on Monika Brejnak by Evelina Simala, the Brejnak Defendants would not have a cause of action against Evelina Simala. The aforementioned conduct, as alleged by the Brejnak Defendants, surely falls within any reasonable definition of "mental abuse," which, as described above, includes verbal abuse that causes or could cause serious emotional injury and indeed neither the Simala Defendants nor the Brejnak Defendants argue otherwise. Black's Law Dictionary 12 (12th ed. 2024). To be sure, in opposition, the Simala Defendants and Brejnak Defendants contend that there is significant evidence in the record to show that the messages sent by Evelina Simala to Monika Brejnak were never *intended* to cause injury. (*See, e.g.*, Simala Opp. Br. at 10 (pointing out that in deposition Evelina Simala testified that she never thought the text messages she sent would be hurting Monika Brejnak); Brejnak Opp. Br. at 12 (stating that "[i]n her testimony, E[velina] Simala continuously stated that she was 'kidding,' 'joking,' 'playing around,' and that she didn't intend to hurt Monika Brejnak.")). However, as Plaintiff points out (Reply at 4), the Mental Abuse Exclusion makes no mention of or otherwise requires the insured's expectation or intention to cause any harm or "bodily injury" in order to be applicable.[4] As such, any disputes at

---

[4] In fact, here, the St. Paul Policy contains a separate exclusion for bodily injury or property damage "[w]hich is expected or intended by an 'insured.'" (Pl. SMF ¶ 6; Simala Resp. SMF ¶ 6; Brejnak Resp. SMF ¶ 6; Ex. 1 to Usery Decl. at STPAUL000033). Accordingly, construing the Mental Abuse Exclusion to include an implicit intent-to-harm requirement would render that exclusion redundant. *See, e.g.*, *Merrimack Mut. Ins. Co. v. Ramsey*, 117 Conn. App. 769, 772–73 (2009) (reading "implicit intentionality requirement" into physical-abuse exclusion "is plainly unreasonable" because clause contains no language "provid[ing] that a consideration of the abuser's intent is required. In fact, the policy contains a separate exclusion that applies specifically to intentional acts."). The Court declines to

to Evelina Simala's subjective intent in sending the disputed digital messages to Monika Brejnak cannot preclude the application of the Mental Abuse Exclusion. Accordingly, a plain and ordinary reading of the Mental Abuse Exclusion and the allegations in the Underlying Action Complaint compels the conclusion that the Mental Abuse Exclusion also places all claims asserted against Evelina Simala in the Underlying Action outside the scope of policy coverage and in fact other courts have applied this very exclusion to preclude similar claims. *See, e.g., Miller*, 742 A.2d at 571 (holding that the exclusion for claims arising out of sexual molestation, corporal punishment or mental abuse in a homeowner's policy excluded coverage for a female employee's claims that her supervisor, the insured, committed an invasion of privacy due to sexually oriented comments and questions that caused plaintiff mental suffering, shame and humiliation because such claims arose out of "mental abuse"); *A.K.*, 2023 WL 6231147, at *5 (finding that allegations against C.R. in the underlying action arising out of C.R.'s alleged physical and sexual assault of A.K. and subsequent harassment, bullying, defamation, and intimidation of her, qualified as mental abuse within meaning of exclusion for mental abuse); *see also Vernon*, 2015 WL 1757642, at *3 (applying Idaho law and holding that claims stemming from co-worker's suicide following receipt of insured's anonymous letter of personal insults were excluded from coverage as mental abuse).

Further, the Court finds that all claims asserted against Stanislav Simala and Anna Simala in the Underlying Action, which include, among others, negligent supervision claims, likewise fall within the purview of the Mental Abuse Exclusion. As described, the Brejnak Defendants allege that Evelina Simala's parents, Stanislav Simala and Anna knew or should have known that injury to Monika Brejnak would likely or probably result from Evelina Simala's conduct and were reckless, or at least negligent, in failing to discharge their parental and supervisory duties which

---

interpret the Mental Abuse Exclusion in such a manner. *See Allstate Ins. Co. v. Schmitt*, 570 A.2d 488, 492 (N.J. Super. Ct. App. Div. 1990) (declining to interpret term in insurance policy that would render term redundant).

resulted in Evelina Simala's conduct and Monika Brejnak's subsequent injuries and death. (Underlying FAC ¶¶ 31 & 51–59; Pl. SMF ¶ 26; Simala Resp. SMF ¶ 26; Brejnak Resp. SMF ¶ 26). In other words, but for the alleged digital communications Evelina Simala sent to Monika Brejnak, which resulted in "humiliation, *mental anguish*, *emotional distress*, *psychological trauma*" (Underlying FAC ¶ 24), and, ultimately, in Monika Brejnak's death, the Brejnak Defendants would not have a cause of action against any of the Simala Defendants, including Anna Simala and Stanislav Simala. As stated above, other courts have held that related claims asserted against parents, including negligent supervision claims like those asserted in this case, fall within policy exclusions that exclude "bodily injury" "arising out of" specific conduct because such claims "arise from" a clear exclusion in the homeowners' policy. *See, e.g.*, *P.D.*, 2014 WL 10102329, at *10. Accordingly, a plain and ordinary reading of the Mental Abuse Exclusion and the allegations in the Underlying Action Complaint compels the conclusion that the Mental Abuse Exclusion places all claims asserted against Anna Simala and Stanislav Simala in the Underlying Action outside the scope of policy coverage.

The Brejnak Defendants' and Simala Defendants' remaining arguments in opposition do not lead this Court to reach a contrary conclusion. To start, the Simala Defendants again argue that the exclusions within the St. Paul Policy are ambiguous because the St. Paul Policy contains a severability clause that provides: "This insurance policy applies separately to 'each insured.' This Liability-Condition will not increase our limit of liability for any one 'occurrence.'" (Simala Opp. Br. at 13–14; Ex. 1 to Usery Decl. at STPAUL000038). As such, they contend that it is unclear whether exclusions for acts by *one* insured—Evelina Simala—extend to preclude coverage for *all* insured's—including her parents—under the policy. (Simala Opp. Br. at 13–14). Because of this ambiguity, the Simala Defendants contend that they are entitled to coverage under the well-

settled principles that ambiguities in an insurance policy must be construed in favor of the insured and that exclusionary clauses should be narrowly construed. (*Id.* at 14). For the same reasons already explained, the Court is not convinced. As the Appellate Division in *Argent* noted, "the purpose of severability clauses is to spread protection, to the limits of coverage, among all of the . . . insureds. The purpose is not to negate bargained-for exclusions which are plainly worded." *Argent*, 901 A.2d at 427 (internal quotation marks and citation omitted). And like in *Argent*, the absence of a direct reference to the inapplicability of the severability clause within the Mental Abuse Exclusion does not render the exception ambiguous. *Id.* at 428. Accordingly, the Court will not rely on the severability clause to negate the plainly worded Mental Abuse Exclusion. *See Villa*, 947 A.2d at 1224–25.

Next, the Brejnak Defendants again contend that even though Plaintiff argues that it is entitled to summary judgment based on its unilateral declaration that every cause of action in the Underlying Action arises out of Evelina Simala's treatment of Monika Brejnak which is allegedly precluded by the Mental Abuse Exclusion, it is well settled that if a complaint includes multiple or alternative causes of action, the duty to defend will attach as long as any of them would be a covered claim and continues until all of the covered claims have been resolved. (Brejnak Opp. Br. at 17–18). Again citing to the New Jersey Supreme Court's decision in *Salem Group v. Oliver*, 607 A.2d 138 (N.J. 1992), the Brejnak Defendants argue that where there are concurrent causes of an injury following an accident, and one of the separate causes of action, alleged in the underlying complaint, would be covered under the policy, the insurer will be held to its duty to defend the insured. (*Id.* at 18–19). And here, they assert that the Underlying Action's causes of action are not solely based on Evelina Simala's conduct, but also on her parents' negligent supervision of her actions and behavior over an extended period of time. (*Id.*). Though the Brejnak Defendants rely

heavily on the New Jersey Supreme Court's decision in *Salem Group v. Oliver*, 607 A.2d 138 (N.J.1992) in raising the aforementioned argument, their reliance on that case is misplaced, as explained above. More specifically, unlike in *Salem Group*, the theories of liability asserted against Anna Simala and Stanislav Simala are based solely on their failure to exercise sufficient control and supervision over Evelina Simala's conduct towards Monika Brejnak, which as described above, falls within the Mental Abuse Exclusion of the St. Paul Policy. As such, unlike the facts in *Salem Group*, this case does not involve a discrete act of negligence (such as service of alcohol to a minor) unrelated to the abuse inflicted by Evelina Simala on Monika Brejnak that would constitute a dual cause of the loss of Monika Brejnak's life.

In sum, the Court finds that the terms of the Mental Abuse Exclusion are clear and unambiguous, and this Court will not engage in a strained construction to support coverage. *Flomerfelt*, 997 A.2d at 996. As such, the Court finds that the Digital Communications Exclusion and the Mental Abuse Exclusion within the St. Paul Policy apply to take *all* of the Brejnak Defendants' claims against the Simala Defendants in the Underlying Action outside the scope of policy coverage.[5]

## IV.    CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is **GRANTED.**

---

[5] Because the Court finds that the Digital Communications Exclusion and Mental Abuse Exclusion both apply to take all of the claims asserted by the Brejnak Defendants against the Simala Defendants outside the scope of policy coverage in this case, the Court need not decide whether the acts alleged in the Underlying Action constitute an "occurrence" under the St. Paul Policy. (Mov. Br. at 8–10; Simala Opp. Br. at 9–12; Brejnak Opp. Br. at 11–13). Nor does the Court need to decide whether the Intentional Acts Exclusion takes all of the claims asserted by the Brejnak Defendants against the Simala Defendants outside the scope of policy coverage in this case. (Mov. Br. at 11–12). Finally, Plaintiff contends that should the Court find that some contested factual issue in the Underlying Action requires resolution in order to determine whether the Brejnak Defendants' claims against the Simala Defendants are covered by the St. Paul Policy, then St. Paul's obligation to the Simala Defendants, if any, ought to be converted to a duty to reimburse. (*Id.* at 16–17). However, because the Court finds that the Digital Communications Exclusion and Mental Abuse Exclusion both apply to take all of the claims asserted by the Brejnak Defendants against the Simala Defendants outside the scope of policy coverage in this case, it need not resolve this issue.

Accordingly the Court finds that: (i) St. Paul owes no duty to defend the Simala Defendants in connection with the Underlying Action; (ii) St. Paul owes no duty to indemnify[6] the Simala Defendants in connection with the Underlying Action; (iii) there is no coverage under the St. Paul Policy for the Underlying Action; and (iv) St. Paul is not liable to pay or satisfy any claims, judgments, or awards in the Underlying Action."  (Mov. Br. at 17–18).   An appropriate Order follows.

Dated: September 30, 2024                                    _s/ Esther Salas_
                                                            **Esther Salas, U.S.D.J.**

---

[6]      A duty to defend may exist regardless of whether an insurer may be held liable "because the duty to defend is broader than a duty to indemnify."  *W9/PHC Real Est. LP v. Farm Fam. Cas. Ins. Co.*, 970 A.2d 382, 391 (N.J. Super. Ct. App. Div. 2009) (citing *Voorhees*, 607 A.2d at 1259).  Conversely, where, as here, there is no duty to defend, there can be no duty to indemnify.  *See Bartow v. Homesite Ins. Co.*, No. 09-2061, 2009 WL 5216964, at *10 n.14 (D.N.J. Dec. 29, 2009).